UNITED STATES DISTRICT COURT
[EASTERN DISTRICT OF NEW YORK]

| | |
|---|---|
| Yuhang Jiang, | |
| Petitioner, | Case No. 1:26-cv-2692 |
| v. | **PETITION FOR WRIT OF** |
| KENNETH GENALO, *in his official capacity as Field Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations*; RAUL MALDONADO, *in his official capacity as Warden of the Metropolitan Detention Center, Brooklyn;* MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States;* EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | **HABEAS CORPUS** |
| Respondents. | |

## INTRODUCTION

1.      Petitioner, Yuhang Jiang, is in the physical custody of Respondents at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232.

2.      He now faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have concluded Petitioner is subject to mandatory detention.

3.      Petitioner is charged with, inter alia, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

4.      Based on this allegation in Petitioner's removal proceedings, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement ("ICE") employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5.      Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

6.      Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are

subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

7.     Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

8.     ICE's detention of Petitioner is arbitrary, unsupported by statute, unconstitutional, and effectuated without any procedural safeguards. This Court should immediately order his release or direct an expedited bond hearing with adequate procedural protections. ICE's conduct fails to comply basic procedural protections required under the Constitution. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

9.     Accordingly, Petitioner seeks a writ of habeas corpus ordering immediate release from custody.

## JURISDICTION

10.     Petitioner is in the physical custody of Respondents. Petitioner is detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232.

11.     This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause). *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law").

PETITION FOR WRIT OF HABEAS CORPUS - 2

12. Federal district courts retain jurisdiction under 28 U.S.C. § 2241 to review challenges to unlawful immigration detention. Petitioner is not challenging removal proceedings but seeks release—in habeas corpus—because Respondents have unlawfully detained him. "Such claims are not barred by § 1252(g)." Lopez-Arevelo v. Ripa, No. EP-25-CV-337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Because Petitioner challenges only the legality of his confinement, jurisdiction is proper in this Court.

13. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All-Writs Act, 28 U.S.C. § 1651.

**VENUE**

14. Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Eastern District of New York, the judicial district in which Petitioner currently is detained.

15. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

**REQUIREMENTS OF 28 U.S.C. § 2243**

16. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

17.     Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

18.     Petitioner Yuhang Jiang is a citizen of China who has been detained by ICE since April 22, 2026, following his arrest at 391 W Peninsula Blvd, Hempstead, NY 11550. ICE did not set bond, and Petitioner is unable to obtain review of his custody by an IJ, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

19.     Respondent Kenneth Genalo is the Field Office Director for the New York City area. In that capacity, Director Genalo oversees all Enforcement and Removal Operations (ERO) activities within the New York City area, which includes the five boroughs of New York City and the surrounding counties under the jurisdiction of the New York Field Office. Director Genalo is sued in her official capacity.

20.     Respondent Raul Maldonado is the Warden of the Metropolitan Detention Center, Brooklyn, where Petitioner is currently detained. As Warden, Respondent has day-to-day custody over Petitioner and is sued in his official capacity.

21.     Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and

PETITION FOR WRIT OF HABEAS CORPUS - 4

Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

22. Respondent Todd Blanche is the Acting Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

23. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

## LEGAL FRAMEWORK

24. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

25. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

26. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

27. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

28.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

29.     The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104--208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

30.     Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

31.     Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

32.     As recently as January 2025, the Laken Riley Act was enacted. This law amended the mandatory detention provision  of INA § 236(c) to apply to aliens who are inadmissible under INA § 212(a)(6)(A), and were arrested for, convicted of, or committed a class of crimes related to theft or injury.[2] If the intent was for aliens charged under INA § 212(a)(6)(A) to be detained under INA § 235, then amending the provisions of INA § 236(c) in this manner would have been

PETITION FOR WRIT OF HABEAS CORPUS - 6

unnecessary. Likewise, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez vs Bostock,* 2025 WL1193850, at \*12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). A contrary interpretation would override the purpose of the statute. *See Yao v. Almodovar*, No. 25-cv-9982 (PAE), at 18 (S.D.N.Y. Dec. 17, 2025) (finding that such interpretation of the Laken Riley Act "is at odds with modern-day principle of statutory construction. A foundational tenet of such is that the purpose of a statute as derived from the statements of legislators *cannot* override its plain text.") (emphasis included) citing *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 111 (1991) (Scalia, J.); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (Thomas, J.); John F. Manning, *Textualism and the Equity of the Statute*, 101 Colum. L. Rev. 1, 6–7 (2001)

33.    On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

34.    The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

35.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the

---

[1] *U.S. Immigration and Customs Enforcement, Interim Guidance Regarding Detention Authority for Applications for Admission.* (July 8, 2025)*, AILA Doc. No. 25071607. https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission*

United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

36.     Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

37.     Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez, supra*.

38.     Subsequently, numerous federal courts adopted the same interpretation of the INA's detention provisions and rejected ICE and EOIR's contrary construction. *See Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-

BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at 2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at 3 (D. Neb. Aug. 19, 2025); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at 2 (D. Neb. Aug. 14, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025).

39.    Moreover, numerous courts—including the Fifth Circuit—have rejected the expansive interpretation that noncitizens who entered without inspection are automatically subject to mandatory detention without bond under 8 U.S.C. § 1225(b)(2), regardless of the duration of their presence in the United States. See, e.g., *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same).

40.     Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

41.     Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[ed] the inadmissibility or deportability of [all] [noncitizen]."

42.     The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez* at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at 7.

43.     § 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

44.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine

whether [all] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

45.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

46.     Although a person present without admission may be classified as an "applicant for admission," that status does not make them a person "seeking admission" under § 1225(b). Treating those terms as synonymous collapses two separate concepts Congress deliberately distinguished. Because Petitioner resides in the United States and is in standard § 1229a proceedings, his detention is authorized, if at all, under § 1226(a). Applying § 1225(b)(2)(A) to individuals in Petitioner's circumstances would disregard the statutory structure and render superfluous. *See Yao v. Almodovar*, No. 25-cv-9982 (PAE), at 11-13 (S.D.N.Y. Dec. 17, 2025) (holding that "as a matter of statutory construction [...] § 1225 applies to arriving noncitizens, and § 1226 governs the process of arresting and detaining noncitizens who have entered the United States and remained here pending their removal.") citing *J.G.O.*, 2025 WL 3040142, at *4; *Esperanza*, 2025 WL 3513983, at *5–6; *Tumba Huamani*, 2025 WL 3079014, at *3–4; *Cardenas v. Almodovar*, No. 25 Civ. 9169, 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025). A noncitizen "cannot be subject to both §§ 1225 and 1226." *Lopez Benitez*, 795 F. Supp. 3d at 485; *see also Villegas*, 2025 WL 3215597, at *2; *Campbell v. Almodovar*, No. 25 Civ. 9509, 2025 WL 3538351, at *1 (S.D.N.Y. Dec. 10, 2025); *Gonzalez*, 2025 WL 2961626, at *4.

47.     In *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), the Fifth Circuit held that noncitizens who conceded they were "applicants for admission" under 8 U.S.C. § 1225(a)(1) could be detained pursuant to § 1225(b)(2)(A) rather than § 1226(a).

The court therefore concluded that those petitioners were not entitled to bond hearings under § 1226(a). The decision is binding within the Fifth Circuit and addressed petitioners who did not dispute their classification as applicants for admission.

48.     Petitioner's case is legally distinct from the Fifth Circuit's recent holding. Unlike the petitioners in that case, Petitioner here does not concede status as an 'applicant for admission' under 8 U.S.C. § 1225(a)(1). Petitioner's circumstances are materially distinguishable. Moreover, unlike the petitioners in *Buenrostro-Mendez*, Petitioner was previously released from custody on Release of Recognizance pursuant to INA § 236, codified at 8 U.S.C. § 1226, reflecting the government's contemporaneous exercise of discretionary detention authority under § 1226(a). See *Stefany Samantha Moreno Madrid v. Brian Acuna et al.*, Case No. 3:25-CV-01572 (W.D. La. Dec. 12, 2025). In that case, the court held that where the government has already issued a warrant of arrest and an Order of Release on Recognizance citing § 236 (§ 1226) as the governing authority, it cannot later reclassify the individual under the mandatory detention provisions of § 1225(b). *See Moreno Madrid*, at *8-9 (W.D. La. Dec. 12, 2025).

49.     Where the government has treated a noncitizen as subject to § 1226 authority—by issuing § 1226 custody documentation and effectuating release under that provision—it cannot subsequently reclassify the individual into mandatory § 1225(b)(2) detention without reconciling that prior statutory treatment. Accordingly, *Buenrostro-Mendez* does not control Petitioner's case.

50.     On February 18, 2026, the Central District of California issued an order in *Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr. et al.*, Case No. 5:25-cv-01873-SSS-BFM, addressing nationwide compliance issues arising from the government's continued reliance on *Matter of Yajure Hurtado*. In that order, the court rejected the executive branch's continued

reliance on *Hurtado* and held that executive agencies cannot privilege an administrative interpretation over a federal court's declaration of law. *Id* at 15-16. The Ninth Circuit granted an administrative stay of the Central District of California's order pending appeal, and it remains in effect as of the date of this Petition. Although the order arises within the Ninth Circuit, its reasoning constitutes persuasive authority for courts addressing the same statutory question.

51.    On April 28, 2026, the Second Circuit issued a precedential decision in *Cunha v. Freden*, No. 25-3141-pr (2d Cir. Apr. 28, 2026). *Cunha* squarely holds that § 1226(a), not § 1225(b)(2)(A), governs the detention of noncitizens who, like Petitioner, are already present in the United States after entering without inspection and who were not apprehended at or near the border at the time of entry. The decision further confirms that the Government's arrest under § 1225 theory creates serious due process concerns because it would authorize an unprecedented mandatory-detention regime for noncitizens who are already present in the United States and who would otherwise be eligible for bond under § 1226(a). See *supra*. As the Second Circuit recognized, noncitizens like Petitioner, who are already present in the United States and are not shown to be a flight risk or danger, must be afforded the possibility of release on bond under § 1226(a) while removal proceedings remain pending.

52.    Accordingly, Respondents' continued reliance on §1225(b)(2) constitutes an unlawful expansion of detention authority inconsistent with governing circuit precedent.

## FACTS

53.    On information and belief, Petitioner has resided in the United States in or about December 2022, and currently lives at 6-11 128th street, College Point, NY 11356.

54.     On April 22, 2026, Petitioner was arrested by local Nassau County police at 391 W Peninsula Blvd, Hempstead, NY 11550. Petitioner was subsequently transferred to U.S. Immigration and Customs Enforcement custody and is now detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232.

55.     DHS placed Petitioner in removal proceedings before the New York Immigration Court pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.

56.     Petitioner works as a ride-hailing driver through social media and maintains a stable source of income and a fixed residence. Petitioner attends Flushing Chinese United Methodist Church. Petitioner is neither a flight risk nor a danger to the community.

57.     According to the ICE Detainee Locator System, Petitioner is presently detained at the Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232. A true and correct copy of the Locator search result is attached hereto as **Exhibit A**.

58.     Petitioner has a pending Form I-589, Application for Asylum and for Withholding of Removal, which was filed prior to his detention and remains awaiting adjudication. A true and correct copy of the Petitioner's Employment Authorization Document, category C08. is attached hereto as **Exhibit B**.

59.     Pursuant to *Matter of Yajure Hurtado*, the immigration judge is unable to consider Petitioner's bond request.

60.     As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from their family and community.

PETITION FOR WRIT OF HABEAS CORPUS - 14

## CLAIMS FOR RELIEF
## COUNT I
## Violation of the INA

61.    Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

62.    The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

63.    The government's own custody paperwork frequently cites §1226 as the basis for detention, reflecting the longstanding agency practice and regulatory understanding that individuals in Petitioner's posture fall under §1226(a). Attempts to recharacterize detention under §1225(b) only after litigation begins deserve little weight, as agencies must justify their actions on the grounds they relied on at the time the action was taken. A shifting litigation position cannot retroactively validate a detention that was never grounded in §1225(b) to begin with.

64.    The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

## COUNT II
## Violation of the Bond Regulations

65.    Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs.

PETITION FOR WRIT OF HABEAS CORPUS - 15

66.     In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

67.     Nonetheless, pursuant to *Matter of Yajure Hurtado*, EOIR has a policy and practice of applying § 1225(b)(2) to individual like Petitioner.

68.     The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## COUNT III
### Violation of Due Process

69.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

70.     The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

71.     Petitioner has a fundamental interest in liberty and being free from official restraint.

72.     The government's detention of Petitioner without a bond redetermination hearing

to determine whether he is a flight risk or danger to others violates his right to due process.

73.     Petitioner's detention violates the Due Process Clause because ICE re-detained Petitioner without providing any of the procedural safeguards required when the government seeks to deprive an individual of liberty. The Supreme Court's framework in *Mathews v. Eldridge*, 424 U.S. 319 (1976), governs this analysis. Under *Mathews*, courts balance three considerations: the weight of the private interest at stake, the risk of erroneous deprivation under existing procedures and the value of additional safeguards, and the government's interest in avoiding additional procedures. Each factor strongly favors Petitioner and demonstrates that the detention is unconstitutional.

74.     Even if the statutory question were settled, Petitioner's detention violates the Constitution. The Due Process Clause prohibits the government from depriving a person of physical liberty without procedural safeguards. Detention, imposed without notice, without an individualized assessment of risk, and without any opportunity to be heard, is fundamentally incompatible with constitutional requirements.

75.     Furthermore, under the Fifth Amendment's Due Process Clause, any restriction on liberty must be reasonably related to a legitimate governmental purpose and must not be excessive in relation to that purpose. See *Zadvydas, supra*. Electronic monitoring and GPS ankle bracelets function as continuing forms of custodial supervision that significantly restrict freedom of movement. In the absence of a lawful basis and individualized findings demonstrating necessity, such surveillance-based conditions impermissibly burden Petitioner's fundamental liberty interests.

## EXHAUSTION

PETITION FOR WRIT OF HABEAS CORPUS - 17

76. There is no statutory requirement that an immigration detainee exhaust administrative remedies, including an appeal of a bond determination to the BIA, before seeking habeas relief under 28 U.S.C. § 2241. Courts in other Districts have repeatedly held that exhaustion in immigration-detention habeas cases is a judicially-created, prudential doctrine, not a jurisdictional bar. *See Nolasco Rodriguez v. Decker*, 507 F. Supp. 3d 179 (S.D.N.Y. 2020). Under the doctrine of exhaustion of administrative remedies, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995) (quoting *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992)).

77. Because Congress has imposed no statutory exhaustion requirement on habeas challenges to immigration detention, courts in this District treat exhaustion as a judicially-created prudential standard rather than a mandatory prerequisite. *Joseph v. Decker*, No. 18-cv-2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)*; see also Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). Further, failure to exhaust administrative remedies may be excused "when such exhaustion would be futile or where the agency has predetermined the issue before it." *See Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (quoting *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009)); *see also Beharry*, 329 F.3d at 62. Failing to attempt to use administrative remedies is not necessarily dispositive of the exhaustion question if the ultimate outcome of such administrative remedies would be futile. *See Velasco Lopez v. Decker*, No. 19-cv -2912 (ALC), 2019 WL 2655806, at *2 (S.D.N.Y. May 15, 2019) (excusing exhaustion on futility grounds though petitioner had not appealed to the BIA); *see also Garcia v. Decker*, No. 20-cv -1345 (LJL), 2020 WL 1435007, at *8 (S.D.N.Y. Mar. 24, 2020); *Joseph*, 2018 WL 6075067, at *5.

78.    The Fifth Circuit has likewise recognized that § 2241 contains no statutory exhaustion requirement and that exhaustion in habeas proceedings is a judicially created, prudential doctrine rather than a jurisdictional bar. Notably, the Fifth Circuit has acknowledged that prudential exhaustion may be excused where administrative remedies are unavailable or futile. *See Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994); *See also Taylor v. United States Treasury Dept.,* 127 F.3d 470,477 (5th Cir. 1997) (noting exhaustion not required where, inter alia, claimant raises constitutional claim that agency would clearly reject). Because the issue presented here is a purely legal challenge to the statutory and constitutional basis for Petitioner's detention—one that the agency lacks authority to definitively resolve—further administrative review would serve no meaningful purpose.

79.    Given this binding precedent, pursuing an administrative appeal would serve no practical purpose. Exhaustion is unnecessary "where the agency's position appears already set and recourse to administrative remedies is very likely futile." *Vasquez-Rodriguez v. Garland*, 7 F.4th (9th Cir. 2021). Because immigration judges are bound by BIA decisions, *Hurtado* forecloses any finding of jurisdiction to consider custody redetermination for noncitizens in Petitioner's position. As a result, only judicial intervention can remove the barrier imposed by *Hurtado* and permit Petitioner to meaningfully pursue the administrative remedies otherwise available to her.

80.    Likewise, the record demonstrates an ongoing pattern of violations by the agency. In practice, immigration bond hearings are routinely denied on boilerplate findings that a detainee is a "flight risk" or "danger to the community," even where the detainee has strong

PETITION FOR WRIT OF HABEAS CORPUS - 19

family, community, and legal ties to the United States and is actively pursuing relief from removal.

81.     That risk is compounded in Petitioner's case. As a practical matter, a detained noncitizen cannot marshal the type of corroborative evidence that immigration courts routinely expect within a very short window. Obtaining character letters from employers, landlords, pastors, community members, or friends requires time, mail or electronic communication, translation, and, frequently, notarization. Petitioner has been given only a very short window in which to request and collect such letters, while simultaneously trying to communicate with counsel and navigate detention-facility restrictions on phone calls, email, and visitation. Under these conditions, "preparing" for a bond hearing is largely illusory: the detainee appears in court without the documentary support that could demonstrate ties to the community and rebut generalized assertions of flight risk or dangerousness.

82.     Requiring Petitioner to pursue further bond proceedings or to exhaust an appeal to the BIA before seeking habeas relief would inflict precisely the sort of irreparable harm that prudential exhaustion is designed to avoid. Each additional day of detention constitutes an ongoing deprivation of liberty; and as in *Nolasco Rodriguez*, the BIA's settled legal position on the relevant bond-hearing standards means that the outcome of any appeal is foreordained.

83.     In the alternative should this Court conclude that a bond hearing is necessary, the government must bear the burden of proving, by clear and convincing evidence, that Petitioner poses either a flight risk or a danger to the community. Shifting that burden to the detainee— particularly after prolonged detention imposed without an individualized hearing—would violate the Due Process Clause and render any further administrative process constitutionally deficient. *See Velasco Lopez* at 28 & n.14 (citing *German Santos v. Warden*, Pike Cnty. Corr. Facility, 965

F.3d 203, 213 (3d Cir. 2020); *Casas-Castrillon v. D.H.S.*, 535 F.3d 942, 951 (9th Cir. 2008);

*Darko v. Sessions*, 342 F. Supp. 3d 429, 435–36 (S.D.N.Y. 2018); *Medley v. Decker*, 18-cv-7361

(AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (discussing the "overwhelming

consensus" of judges in the Southern District on this issue), appeal filed, (2d Cir. Dec. 27, 2019);

*Rajesh v. Barr*, No. 6:19-cv-06415 (MAT), 2019 WL 5566236, at *6 (W.D.N.Y. Oct. 29, 2019)

(joining the "vast majority" of district courts to hold that the Due Process Clause required the

Government to bear the burden by clear and convincing evidence of justifying detention), appeal

filed, (2d Cir. Dec. 27, 2019). *See also Brito v. Barr*, No. 19-cv-11314 (PBS), 2019 WL

6333093, at *4 (D. Mass. Nov. 27, 2019), appeal filed, (1st Cir. Feb. 10, 2020); *Hernandez-Lara*

*v. Immigr. & Customs Enf't, Acting Dir.*, 19-cv-394 (LM), 2019 WL 3340697, at *8 (D.N.H.

July 25, 2019), appeal filed sub nom. *Hernandez Lara v. Lyons* (1st Cir. Oct. 11, 2019).

84.    As of the date of this Petition, the district court's order vacating *Matter of Yajure*

*Hurtado* was stayed pending the Ninth Circuit's resolution of the government's emergency stay

request and appeal. As a result, *Matter of Yajure Hurtado* presently remains operative precedent

for immigration judges, and immigration courts continue to apply it in denying bond jurisdiction

for individuals who entered the United States without inspection.

85.    Accordingly, any attempt by Petitioner to seek a bond hearing before the

immigration court or to pursue administrative review before the BIA would be futile, because

immigration judges remain bound by *Hurtado* and lack authority to consider custody

redetermination for individuals in Petitioner's position.

86.    For all of these reasons, Petitioner respectfully submits that he is not required to

exhaust further bond-hearing remedies before seeking habeas relief in this Court. In the

alternative, to the extent any exhaustion requirement applies, this Court should excuse

exhaustion on the grounds of futility, inadequacy of the bond-hearing process, and the ongoing irreparable harm caused by Petitioner's continued detention.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Order that Petitioner shall not be transferred outside New York while this habeas petition is pending;

c. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d. Declare that Petitioner's detention is unlawful;

e. Order Petitioner's immediate release from custody; or, in the alternative, grant such other relief as this Court deems just, proper, and appropriate under 28 U.S.C. § 2241.

f. In the alternative, should the Court decline to order Petitioner's immediate release, Petitioner respectfully requests that the Court order a prompt individualized bond hearing at which the Government bears the burden of justifying continued detention by clear and convincing evidence, and must demonstrate that Petitioner poses a risk of flight or a danger to the community;

g. Order that, upon release, Respondents shall not impose any electronic monitoring, location-tracking device, GPS ankle bracelet, or any other form of surveillance-based conditions on Petitioner; and

h.      Award Petitioner attorney's fees and costs under the Equal Access to Justice Act

("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under

law.


Dated: May 5, 2026              LAW OFFICE OF NG & WASSERMAN PLLC

                                /s/ Jed S. Wasserman

                                By:    Jed Wasserman
                                LAW OFFICE OF NG&WASSERMAN PLLC
                                27  East Broadway, 2nd Floor
                                New York, NY 10002
                                Telephone: (212) 925-5616
                                jedwasserman@ngwasserman.com

PETITION FOR WRIT OF HABEAS CORPUS - 23

# EXHIBIT A

 Official Website of the Department of Homeland Security

Report

Main Menu

< BACK TO RESULTS

# Facility Page

## Detention Information For:

**JIANG YU HANG**
**Country of Birth:** China, Peoples Republic of
**A-Number:** 246562501

## Current Detention Facility:

BROOKLYN MDC
80 29th Street
Brooklyn, NY 11232
**Visitor Information:** (718) 840-4200

# ERO Office Information

Family members and legal representatives may be able to
obtain additional information about this individual's case by
contacting this ERO office:

VARRICK, NY, SERVICE PROCESSING CENTER
(DOCKET CONTROL OFFICE)
**Phone Number:** (212) 863-3401

BACK TO SEARCH >

# EXHIBIT B

# UNITED STATES OF AMERICA
# EMPLOYMENT AUTHORIZATION

JIANG YUHANG 15 MAR

Surname

**JIANG**

Given Name

**YUHANG**

USCIS#          Category    Card#

**246-562-501    C08    IOE0928922790**

Terms and Conditions

**None**

Date of Birth          Sex

**15 MAR 1982    M**

Country of Birth

**China**

Valid From: **12/10/24**

Card Expires: **12/09/29**

**NOT VALID FOR REENTRY TO U.S.**

FORM I-766
Rev (12-2021)    51910332



This card is not evidence of U.S. citizenship or permanent residence.
This document is void if altered, and may be revoked by the U.S. Government.
The person identified is authorized to work in the U.S. for the validity of this card.

56C        If found, drop in any US Mailbox.  USPS: Mail to 7 Product Way, Lees Summit, MO 64002

```
IAUSA2465625013IOE0928922790<<
8203151M2912095CHN<<<<<<<<<<2
JIANG<<YUHANG<<<<<<<<<<<<<<<<<
```